[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14320

_____

D. C. Docket No. 00-00048 CR-3-008-LAC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2007
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM SCOTT DOHAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 28, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and ALBRITTON,* District
Judge.

_____

    *Honorable W. Harold Albritton, III, United States District Judge for the Middle District
of Alabama, sitting by designation.

PER CURIAM:

William Scott Dohan appeals his conviction and sentence of 156 months of imprisonment for conspiracy to commit wire fraud and security fraud, and for conspiracy to engage in or attempt to engage in money laundering, all involving a multi-defendant "Ponzi scheme." 18 U.S.C. § 371; 18 U.S.C. § 1956(h). Dohan argues that (1) the prosecutor elicited and exploited false testimony from co-conspirator B. David Gilliland, regarding his plea agreement obligations; (2) the prosecutor impermissibly used religious and other "vouching" to bolster Gilliland's credibility; (3) the district court abused its discretion by barring evidence of Gilliland's net profits from the conspiracy; (4) the district court abused its discretion by rejecting a series of requested jury instructions concerning judicial neutrality, religious beliefs, witness perjury, and a "good faith" theory of defense; and (5) the cumulative impact of these same errors requires reversal. Finally, Dohan argues that his conviction for conspiracy to launder money must be reversed due to the omission in the court's instructions to the jury of "willfulness" as an essential element of that crime. After careful consideration, we affirm Dohan's convictions and sentence.

First, Dohan argues that the government improperly solicited, failed to correct, and exploited false testimony from Gilliland to the effect that, having

completed his term of imprisonment, he was testifying of his own volition. Dohan contends that this suggested that he was no longer obligated under his plea agreement to appear and testify, even though the government knew that he was still on supervised release. Solicitation of or failure to correct false testimony requires a new trial only if such testimony "could . . . in any reasonable likelihood have affected the judgment of the jury." Giglio v. United States, 405 U.S. 150, 153 (1972). As Dohan did not object to the testimony at trial, we additionally review for plain error. Johnson v. United States, 520 U.S. 461, 466-67 (1997); United States v. Nixon, 918 F.2d 895, 905 (11th Cir. 1990).

Gilliland's testimony was not patently false. Regardless of any technical obligations under the plea agreement, the prosecution's questions went to the more relevant credibility issue of Gilliland's beliefs regarding his obligations under the plea agreement, and thus his motivation to appear and testify truthfully. The agreement was made available to defense counsel long before trial, and he vigorously cross-examined Gilliland with respect to other portions of the plea agreement, but did not cross-examine him with respect to his belief regarding any consequences if he failed to testify. This court concludes that there was no error, and certainly none so plain and obvious that it affected Dohan's "substantial rights" or the "fairness, integrity, or public reputation of judicial proceedings." See

3

Johnson, 520 U.S. at 469-70.

Second, Dohan argues that the government improperly "vouched" for the credibility of Gilliland's testimony by suggesting it had been "checked" by the prosecutor, and also by the judge in earlier reducing Gilliland's sentence for giving substantial assistance, and violated FED. R. EVID. 610 by soliciting comments from Gilliland about being a "moral, Christian man."

Whether the government has improperly vouched for a witness's credibility is a mixed question of law and fact subject to plenary review. United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). Viewing the comments referred to involving checking on the witness's story and the earlier sentencing of the witness in the context of the witness's overall testimony, we conclude that they neither were improper nor prejudicially affected the substantial rights of the defendant. Id. We find no error.

Dohan's contention that comments by Gilliland that he was a "moral, Christian man" violated FED. R. EVID. 610 fails. The government did not elicit the testimony on direct examination. The unsolicited comment came from the witness upon the prosecution's redirect examination, responding to defense counsel's having questioned him on why the jury should believe him at trial when he had previously committed perjury and other bad acts. Further questions by the

4

prosecution were not for the purpose of showing that the witness's credibility was enhanced by his religious beliefs. At no time did defense counsel object, but instead attempted upon recross to ask his own impermissibly religious question. Furthermore, the government agreed not to mention the unsolicited religious reference in its closing argument, where it even invited the jury to disregard Gilliland's entire testimony if it wished, and convict on other evidence. The court concludes that there was no plain error.

Third, Dohan argues that the district court erred by excluding a chart and testimony from a witness showing Gilliland's net profits from the Ponzi scheme as compared to his own. A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005), cert. denied, 126 S.Ct. 1809 (2006). District courts are well within their discretion to exclude even relevant evidence for undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403. Defense counsel was free to compare the relative profits in his closing argument based on other admitted evidence, without the benefit of the excluded chart and testimony. The government indicated that inclusion of the chart and testimony would require it to conduct extensive cross-examination. The district court did not abuse its discretion by excluding it.

Fourth, Dohan argues that the court erred in rejecting a series of four requested jury instructions. Reviewed for abuse of discretion, failure to give a requested instruction is reversible only where the instruction "(1) was correct, (2) was not substantially covered by a charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Eckhardt, 466 F.3d 938, 947–48 (11th Cir. 2006) (internal citations omitted). Reviewing the jury instructions actually given, as a whole, this court will reverse the district court only if we are left with a substantial, ineradicable doubt as to whether the jury was properly guided in its deliberations in this regard. Id. at 948. Here, we have no such doubt.

Dohan's requested instruction regarding judicial neutrality was substantially covered by the judge's modified instruction that the jury should disregard anything the judge may have "said or done before or during the trial." Since we conclude that FED. R. EVID. 610 was not violated by religious remarks, there was no abuse of discretion in refusing to give the requested Rule 610 instruction. The court's instructions regarding what to consider in judging witness credibility, including directions to view plea agreement testimony with greater caution, adequately substituted for the requested "prior perjury" instruction, and rendered it

6

unnecessary. See United States v. Shearer, 794 F.2d 1545, 1551 (11th Cir. 1986).

Finally, Dohan argues that the court erred in refusing to allow Dohan's requested "good faith" theory of defense instruction, which emphasized the objective factors of repayment and lack of profit as indicating lack of intent. As the actual jury instruction adequately informed the jury's good faith analysis, there was no reversible error leaving a substantial, ineradicable doubt as to whether the court's instructions properly guided the jury's deliberations. United States v. Puche, 350 F.3d 1137, 1148 (11th Cir. 2003). In sum, the court did not abuse its discretion by refusing the four requested jury instructions.

Fifth, Dohan contends that the "cumulative impact" of the aforementioned errors requires reversal. The cumulative impact of multiple evidentiary and instructional errors are reviewed *de novo*, although some of the errors might individually be reviewed for plain error. *United States v. Hands*, 184 F.3d 1322, 1334 (11th Cir. 1999) (internal citations omitted). The government dismisses Dohan's contention, arguing that there were no individual errors, much less harmless errors that might cumulatively rise to the level of reversible error. This Court recognizes that "the combination of prosecutorial misconduct and improper judicial conduct can, in an extreme case, deny a defendant a fair trial." United States v. Elkins, 885 F.2d 775, 787 (11th Cir. 1989). There was no such

misconduct here, however, and the cumulative impact of the matters argued by Dohan do not come close to requiring a reversal.

Finally, Dohan argues that the district court erred in denying his motion to instruct the jury that "willfulness," or specific intent, was an essential element of the crime of money laundering conspiracy, 18 U.S.C. § 1956(h), as shown in this circuit's applicable pattern jury instruction. The district court concluded that only general intent, or "knowledge" was required, and modified the second element language from the pattern jury instructions for § 1956(h). See Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 70.5 (2003). The pattern instruction as to what must be proved for conviction under § 1956(h) includes:

> Second: that the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

Id.

The district court gave Pattern Jury Instruction 70.5 in its entirety except that it modified the second required element of the offense to read:

> Second, that the defendant knowingly and voluntarily joined or participated in the conspiracy.

The pattern jury instructions are drafted by a committee of district judges appointed by the Chief Judge of the Circuit and adopted by resolution of the Judicial Council of the Eleventh Circuit. Although generally considered "a

8

valuable resource, reflecting the collective research of a panel of distinguished judges," they are not binding; Eleventh Circuit case law takes precedence. United States v. Polar, 369 F.3d 1248, 1252-53 (11th Cir. 2004); United States v. Veltmann, 6 F.3d 1483, 1492 (11th Cir. 1993); Judicial Council of the Eleventh Circuit Resolution ("[T]he content of such instructions . . . must await case by case review by the Court.").

The district court correctly instructed the jury, notwithstanding the pattern jury instructions, that the appropriate mental state for convicting under § 1956(h) was merely "knowing and voluntarily," as we have held in cases post-dating the adoption of the pattern instruction. See, e.g., United States v. Kennard, 472 F.3d 851, 856 (11th Cir. 2006) ("knowingly and voluntarily participated in the agreement"); United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir. 2005) ("knowingly and voluntarily joined or participated in the conspiracy"). To that extent, Pattern Jury Instruction 70.5 places a higher burden on the government for proving an offense under 18 U.S.C. § 1956(h) than does the statute, and should not be used. The district court, therefore, committed no error in its instruction which modified the pattern one.

For all of the reasons discussed above, Dohan's conviction and sentence are **AFFIRMED**.